UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

**07 CV 1917**

Civ. No.

-------------------------------------------------------------x

LINDA C. WEN On Behalf of Herself
and All Others Similarly Situated,

     Plaintiff,

   vs.

OPENWAVE SYSTEMS INC., DAVID C.
PETERSCHMIDT, HAROLD L. COVERT,
DONALD LISTWIN, and ALAN BLACK,

     Defendants.

--------------------------------------------------------------x

**CLASS ACTION COMPLAINT
FOR VIOLATIONS OF
FEDERAL SECURITIES LAWS**

**JURY TRIAL DEMANDED**

RECEIVED
MAR 0 5 2007
U.S.D.C. S.D. N.Y.
CASHIERS

   Plaintiff brings this securities fraud action individually on behalf of herself

and as a class action on behalf of all persons or entities who purchased or acquired the common

stock of Openwave Systems Inc. ("Openwave" or the "Company") during the period from

September 30, 2002 through and including October 26, 2006 (the "Class Period") and were damaged

thereby. Plaintiff alleges the following facts upon knowledge, with respect to her own acts, and with

respect to all other facts, based on an investigation conducted by her counsel, including, among

other things, a review of Openwave's public filings and press releases, news, and research reports

about the Company, and upon other information available to the public.

## NATURE OF THE ACTION

1.    In 2000 and 2001, the senior executives of Openwave caused the Company to grant

to its executives and certain other employees of the Company stock options that improperly had

exercise prices below the market price of Openwave stock on the actual date of grant. The Company

and the Individual Defendants (defined below) failed to disclose this fact, and instead issued

numerous false and misleading public statements misrepresenting the Company's financial

statements, including its accumulated deficit, in violation of generally accepted accounting principles ("GAAP"). When these improper grants and the improper accounting concealing them were finally revealed to the public, the price of Openwave stock declined dramatically, causing substantial damages to investors.

2.      On December 1, 2006, the Company issued a press release and filed its Form 10-K for the fiscal year ended June 30, 2006 (the "2006 10-K") disclosing, for the first time, that its previously reported financial results were inaccurate and were being restated. Specifically, the Company increased its accumulated deficit by $182 million to correct for option expenses that were improperly under-reported between 2001 and 2005.

3.      Plaintiff brings this action seeking to recover damages caused by Openwave's and the Individual Defendants' violations of Section 10(b) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder by the United States Securities and Exchange Commission (the "SEC"), and Section 20(a) of the Exchange Act.

## JURISDICTION AND VENUE

4.      This Court has jurisdiction over the subject matter of this action pursuant to and Section 27 of the Exchange Act, 15 U.S.C. §78aa. The claims arise under Sections 10(b) and 20(a) of the Exchange Act, 15 U.S.C. §§ 78j(b) and 78t(a); the rules and regulations promulgated thereunder, including SEC Rule 10b-5, 17 C.F.R. 240.10b-5.        Venue is proper in this District pursuant to Section 27 of the Exchange Act, and 28 U.S.C. § 1391(b) and (c). The Office of the United States Attorney for the Southern District of New York (the "U.S. Attorney") and the Securities and Exchange Commission (the "SEC") each are conducting investigations into the Company's stock option granting practices, which comprise a substantial part of the wrongful conduct alleged herein.

5.       In connection with the wrongful acts and conduct alleged herein, Defendants, directly and indirectly, used the means and instrumentalities of interstate commerce, including the United States mail and the facilities of the NASDAQ Stock Market, a national securities market located in this District.

## THE PARTIES

6.       Plaintiff Linda C. Wen ("Plaintiff') purchased shares of common stock of Openwave during the Class Period, as set forth in the attached certification, and suffered damages as a result of the violations of the federal securities laws alleged herein.

7.       Defendant Openwave is a Delaware corporation with its principal executive offices located at 2100 Seaport Blvd., Redwood City, California. Openwave develops software products and services for the telecommunications industry. As of November 30, 2006 there were 94,612,874 shares of Openwave common stock outstanding. Throughout the Class Period, Openwave operated on a fiscal year ending on June 30.

8.       Defendant David C. Peterschmidt ("Peterschmidt") has been President and Chief Executive Officer ("CEO") of Openwave and a member of its Board of Directors(the "Board") since November 2004. Peterschmidt is being sued only for false statements made after his employment at Openwave beginning in November 2004.

10.       Defendant Harold L. Covert, Jr. ("Covert") has been Chief Financial Officer ("CFO") of Openwave since October 1, 2005. From April 2003 to September 2005, Covert served as a Director, as Chairman of the Audit Committee of the Board, and member of the Board's Nominating and Corporate Governance Committee. Defendant Covert is being sued only for statements made after April 2003.

11.       Defendant Donald Listwin ("Listwin") was Chief Executive Officer, President and Director of Openwave from September 2000 until November 2004. Defendant Listwin is not

being sued in this action for statements made by Openwave or other defendants for the first time after his resignation from the Company in November 2004.

12.     Defendant Alan Black ("Black") was Senior Vice President, Corporate Affairs and Chief Financial Officer from November 2000 until April 24, 2003. Defendant Listwin is not being sued in this action for statements made by Openwave or other defendants for the first time after his resignation from the Company in November 2004.

13.     Defendants Peterschmidt, Covert, Listwin, and Black are referred to collectively herein as the "Individual Defendants."

## CLASS ACTION ALLEGATIONS

14.     Plaintiff brings this action on her own behalf and as a class action pursuant to Rule 23(a) and Rule 23(b)(3) of the Federal Rules of Civil Procedure on behalf of a class (the "Class") consisting of all persons or entities who purchased or acquired Openwave common stock during the period from September 30, 2002 through October 26, 2006, inclusive ("the Class Period") and suffered damage as a result.

15.     Excluded from the Class are the Defendants herein, members of the immediate family of each of the Individual Defendants, executive officers and/or directors of Openwave during the Class Period, any person, firm, trust, corporation, officer, director, or any other individual or entity in which any Defendant has a controlling interest or which is related to or affiliated with any of the Defendants, and the legal representatives, agents, affiliates, heirs, successors-in-interest or assigns of any such excluded party.

16.     Openwave common stock was actively traded on the NASDAQ Stock Market, which is an efficient market, throughout the Class Period. Numerous securities analysts published reports about Openwave during the Class Period, including analysts from Cannacord Adams, Deutsche

Bank Securities, JP Morgan, Kaufman Brothers, Merrill Lynch, Thomas Weisel, Wachovia Securities, and Wedbush Morgan Securities. Hundreds of thousands of Company shares were traded every day during the Class Period and, on numerous days, over a million Openwave shares were traded.

17.     The members of the Class, purchasers on the NASDAQ Stock Market are so numerous that joinder of all members is impracticable. While the exact number of Class members can only be determined by appropriate discovery, Plaintiff believes that Class members number in the thousands. As of November 30, 2006, Openwave reported that it had 94,612,874 shares of common stock issued and outstanding.  Plaintiffs claims are typical of the claims of members of the Class. Plaintiff and all members of the Class sustained damages as a result of the conduct complained of herein.

18.     Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation. Plaintiff has no interests that are contrary to or in conflict with those of the members of the Class that Plaintiff seeks to represent.

19.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy. Because the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it virtually impossible for the plaintiff Class members individually to seek redress for the conduct alleged.

20.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

         a.      whether the federal securities laws were violated by Defendants' acts as alleged

herein;

b.    whether the documents, including the Company's filings with the SEC and other

public statements made by Defendants, omitted to state andlor misrepresented

material facts concerning, among other things, the Company's financial results,

including stock-based compensation expense, net income (loss), and accumulated

deficit;whether Defendants acted knowingly or recklessly in misrepresenting

material facts;

c.    whether the market price of Openwave stock during the Class Period was

artificially inflated due to the material misrepresentations complained of

herein; and

e.    whether the members of the Class have sustained damages and, if so, the

appropriate measure thereof

22.    Plaintiff knows of no difficulty that will be encountered in the management of

this litigation that would preclude its maintenance as a class action.

23.    The names and addresses of the record owners of Openwave shares purchased

during the Class Period, are available from the Company's transfer agent(s). Notice can be

provided to such record owners via first class mail using techniques and a form of notice similar to

those customarily used in class actions.

### OPENWAVE BACKDATED NUMEROUS STOCK OPTION GRANTS

24.    The 1999 Openwave Proxy (filed under the name of its predecessor

corporation, Phone.com) explained the Company's stock option plans as follows:

> [The Company] has utilized its stock option plans to provide executives
> and   other   key   employees   with   incentives   to   maximize   long-term

stockholder value. Awards under this plan by the Board take the form of stock options designed to give the recipient a significant equity stake in Phone.com and thereby closely align his or her interests with those of [the Company's stockholders....

*Each option grant allows the executive officer to acquire shares of Common Stock at a fixed price per share (the fair market value on the date of grant)* over a specified period of time (up to 10 years). Options granted to the executive officersprior to calendar 1999, typically vested in periodic installments over a four-year period. The options granted to the executive officers in June 1999 vest over a seven year period and the Company expects that future options granted to executive officers will also vest over a seven year period. *Accordingly, the option will provide a return to the executive officer* only if he or she remains in Phone.com's service, and then *only if the market price of the Common Stock appreciates over the option term.*

(Emphasis added).

25.     Openwave also utilized a stock option plan to attract and retain directors of the Company which similarly specified that "[t]he per Share exercise price for the Shares to be issued pursuant to exercise of an Option shall be 100% of the fair market value per Share on the date of grant of the Option." (1999 Directors' Stock Option Plan, ¶ 8(a)).

26.     "Backdating" an option grant means falsely changing an option's grant date to a earlier date when the market price of the underlying stock was lower than on the actual date the option was granted. This practice by Defendants improperly allowed Company officials to profit by setting the options' strike price with the benefit of hindsight instead of using the then-current price. Backdating is the functional equivalent of using today's *Wall Street Journal* to buy or sell stocks based on yesterday's trading prices.

27.     Backdating, because it used an improperly low strike price and masked true compensation expense, caused the Company's financial statements to overstate income. GAAP specifically prescribes the proper financial reporting for stock options. In fact, Openwave's own disclosures highlighted the applicable GAAP provisions and purported to inform investors of the compensation cost that Openwave incurred. Accounting Principals Board Opinion Number 25,

"Accounting for Stock Issued to Employees" ("APB 25"), which became effective more than thirty years ago in 1972, applied to Openwave's disclosures through 2005. Openwave opted to report stock option cost by applying the "intrinsic value method," as set forth in APB 25. Applying this method, a stock has "intrinsic value" when a company grants options at a strike price that was below the value of the underlying stock on the day of grant. If a stock option has "intrinsic value," the issuing company is required to recognize the difference in value as a compensation expense on its financial statements. Notwithstanding this longstanding GAAP requirement, defendants did not record the intrinsic value of the options they improperly backdated, which caused the earnings {or losses) reported by Openwave during the Class Period to be overstated (or understated), and the Company's accumulated deficit to be understated.

## FALSE AND MISLEADING STATEMENTS

28.     On September 30, 2002, the Company filed with the SEC its Form 10-K for the fiscal year ended June 30, 2002 (the "2002 10-K"). The 2002 10-K disclosed that Openwave had stock-based compensation expense of $14.9 million and $10.2 million, net loss of $1.2 million and $0.7 million, for the fiscal years ended June 30, 2002 and 2001, respectively, and accumulated deficit as of June 30, 2002 of $2.32 billion. Defendants Listwin and Black signed the 2002 Form 10-K. The certifications that Defendants Listwin and Black each signed pursuant to §906 of the Sarbanes-Oxley Act of 2002, which were included in the 2002 10-K, falsely stated that information contained in 2002 10-K fairly presents in all material respects the financial condition and results of operations of Openwave.

29.     The statements set forth above in ¶ 28 were materially false and misleading. As was ultimately disclosed in Openwave's 2006 10-K, because Openwave had backdated options, causing them to have intrinsic value on the date of grant, the Company underreported expenses. Openwave's

2006 10-K discloses that, had these options been properly accounted for, the Company would have recognized additional expenses of $31.7 million, $135.7 million, and $3.1 million in fiscal 2002, 2001, and 2000, respectively. Because Openwave did not properly account for these expenses in the periods in which they should have been incurred, its accumulated deficit was understated by the cumulative amount of those expenses in each period (i.e. $3.1 million, $138.5 million, and $170.1 million in fiscal 2000, 2001, and 2002, respectively). The Sarbanes-Oxley certifications signed by Listwin and Black were materially false and misleading because Openwave underreported its expenses, net loss, and accumulated deficit and therefore its financial statements did not fairly present its financial condition and results of operations.

      30.     On October 22, 2002, the Company issued a press release entitled "Openwave Reports Results for First Quarter Fiscal 2003." The press release disclosed that net losses under GAAP were $138.5 million and $474.8 million for the quarters ended September 30, 2002 and June 30, 2002, respectively.

      31.     The statements set forth above in ¶ 30 were materially false and misleading. As was ultimately disclosed in Openwave's 2006 10-K, because Openwave had backdated options, causing them to have intrinsic value on the date of grant, the Company underreported expenses. Openwave's 2006 10-K discloses that, had these options been properly accounted for, the Company would have recognized additional expenses of $10.3 million and $31.7 million, in fiscal 2003 and 2002, respectively. The 2006 10-K further discloses that such amounts were required to be amortized over the related service period, demonstrating that the press release understated net losses for the quarterly periods.

      32.     On November 14, 2002, the Company filed with the SEC its Form 10-Q for the fiscal quarter ended September 30, 2002 (the "1Q 2003 10-Q"). The 1Q 2003 10-Q disclosed that

Openwave had stock-based compensation expense of $0.7 million and $5.0 million and net loss of $138.5 million and $170.1 million for the three months ended September 30, 2002 and 2001, respectively. The 1Q 2003 10-Q also disclosed that Openwave had an accumulated deficit of $2.46 billion $2.32 billion on September 30, 2002 and June 30, 2002, respectively. Defendant Black signed the IQ 2003 10-Q. The certifications that Defendants Listwin and Black each signed pursuant to §906 of the Sarbanes-Act of 2002, which were included in the IQ 2003 10-Q, falsely stated that information contained in IQ 2003 10-Q fairly presents in all material respects the financial condition and results of operations of Openwave.

33.     The statements set forth above in ¶ 32 were materially false and misleading. As was ultimately disclosed in Openwave's 2006 10-K, because Openwave had backdated options, causing them to have intrinsic value on the date of grant, the Company underreported expenses. Openwave's 2006 10-K discloses that, had these options been properly accounted for, the Company would have recognized additional expenses of $10.3 million and $31.7 million, in fiscal 2003 and 2002, respectively. The 2006 10-K further discloses that such amounts were required to be amortized over the related service period, demonstrating that the 1Q 2003 10-Q understated net losses for the quarterly periods. Because Openwave did not properly account for these expenses in the periods in which they should have been incurred, its accumulated deficit was understated by the cumulative amount of those expenses for each full fiscal year (i.e. $3.1 million, $138.5 million, and $170.1 million in fiscal 2000, 2001, and 2002, respectively) and understated by between $170.1 million and $180.5 million at September 30, 2002. The Sarbanes-Oxley certifications signed by Listwin and Black were materially false and misleading because Openwave underreported its expenses, net loss, and accumulated deficit and therefore its financial statements did not fairly present its financial condition and results of operations.

34.     On January 21, 2003, the Company issued a press release entitled "Openwave Reports Second Quarter Fiscal 2003 Results." The press release disclosed that net losses under GAAP were $29.5 million, $138.5 million, and $499.9 million for the quarters ended December 30, 2002, September 30, 2002 and December 30, 2001, respectively.

35.     The statements set forth above in ¶ 34 were materially false and misleading. As was ultimately disclosed in Openwave's 2006 10-K, because Openwave had backdated options, causing them to have intrinsic value on the date of grant, the Company underreported expenses. Openwave's 2006 10-K discloses that, had these options been properly accounted for, the Company would have recognized additional expenses of $10.3 million and $31.7 million, in fiscal 2003 and 2002, respectively. The 2006 10-K further states that such amounts were required to be amortized over the related service period, demonstrating that the press release understated Openwave's net losses for the quarterly periods.

35.     On February 14, 2003, the Company filed with the SEC its Form 10-Q for the fiscal quarter ended December 30, 2002 (the "2Q 2003 10-Q"). The 2Q 2003 10-Q disclosed that Openwave had stock-based compensation expense of $1.3 million and $4.4 million, net loss of $29.5 million and $499.9 million for the three months ended December 30, 2002 and 2001, respectively. The 2Q 2003 10-Q also disclosed that Openwave had an accumulated deficit of $2.49 billion and $2.32 billion on December 30, 2002 and June 30, 2002, respectively. Defendant Black signed the 2Q 2003 10-Q. The certifications that Defendants Listwin and Black each signed pursuant to §906 of the Sarbanes-Act of 2002, which were included in the 2Q 2003 10-Q, falsely stated that information contained in 2Q 2003 10-Q fairly presents in all material respects the financial condition and results of operations of Openwave.

36.     The statements set forth above in ¶ 36 were materially false and misleading. As was

ultimately disclosed in Openwave's 2006 10-K, because Openwave had backdated options, causing them to have intrinsic value on the date of grant, the Company underreported expenses. Openwave's 2006 10-K discloses that, had these options been properly accounted for, the Company would have recognized additional expenses of $10.3 million and $31.7 million, in fiscal 2003 and 2002, respectively. The 2006 10-K further discloses that such amounts were required to be amortized over the related service period, demonstrating that the 2Q 2003 10-Q understated net losses for the quarterly periods. Because Openwave did not properly account for these expenses in the periods in which they should have been incurred, its accumulated deficit was understated by the cumulative amount of those expenses for each full fiscal year (i.e. $3.1 million, $138.5 million, and $170.1 million in fiscal 2000, 2001, and 2002, respectively) and understated by between $170.1 million and $180.5 million at December 31, 2002.

37.     The Sarbanes-Oxley certifications signed by Listwin and Black were materially false and misleading because Openwave underreported its expenses, net loss, and accumulated deficit and therefore its financial statements did not fairly present its financial condition and results of operations.

38.     On April 24, 2003 the Company issued a press release entitled "Openwave Reports Results for Third Quarter Fiscal 2003." The press release disclosed that net losses under GAAP were $23.2 million, $29.5 million, and $115.7 million for the quarters ended March 31, 2003, December 31, 2002 and March 31, 2002, respectively.

39.     The statements set forth above in ¶ 38 were materially false and misleading. As was ultimately disclosed in Openwave's 2006 10-K, because Openwave had backdated options, causing them to have intrinsic value on the date of grant, the Company underreported expenses. Openwave's 2006 10-K discloses that, had these options been properly accounted for, the Company

would have recognized additional expenses of $10.3 million and $31.7 million, in fiscal 2003 and

2002, respectively. The 2006 10-K further discloses that such amounts were required to be

amortized over the related service period, demonstrating that the press release understated net

losses for the quarterly periods.

40.     On May 14, 2003, the Company filed with the SEC its Form 10-Q for the fiscal

quarter ended March 31, 2003 (the "3Q 2003 10-Q"). The 3Q 2003 10-Q disclosed that Openwave

had stock-based compensation expense of $0.7 million and $2.9 million, net losses of $23.2 million

and $115.7 million for the three months ended March 31, 2003 and 2002, respectively. The 3Q 2003

10-Q also disclosed that Openwave had an accumulated deficit of $2.51 billion and $2.32 billion on

March 31, 2003 and June 30, 2002, respectively. The certification that Defendant Listwin signed

pursuant to §906 of the Sarbanes-Act of 2002, which was included in the 3Q 2003 10-Q, falsely

stated that information contained in 3Q 2003 10-Q fairly presents in all material respects the

financial condition and results of operations of Openwave.

41.     The statements set forth above in ¶ 40 were materially false and misleading. As was

ultimately disclosed in Openwave's 2006 10-K, because Openwave had backdated options, causing

them to have intrinsic value on the date of grant, the Company underreported expenses. Openwave's

2006 10-K discloses that, had these options been properly accounted for, the Company would have

recognized additional expenses of $10.3 million and $31.7 million, in fiscal 2003 and 2002,

respectively. The 2006 10-K further discloses that such amounts were required to be amortized over

the related service period, demonstrating that the 3Q 2003 10-Q understated net losses for the

quarterly periods. Because Openwave did not properly account for these expenses in the periods in

which they should have been incurred, its accumulated deficit was understated by the cumulative

amount of those expenses for each full fiscal year (i.e. $3.1 million, $138.5 million, and $170.1

million in fiscal 2000, 2001, and 2002, respectively) and understated by between $170.1 million and $180.5 million at March 31, 2003. The Sarbanes-Oxley certification signed by Listwin was misleading because Openwave underreported its expenses, net loss, and accumulated deficit and therefore its financial statements did not fairly present its financial condition and results of operations.

42.      On July 24, 2003 the Company issued a press release entitled "Openwave Reports Fourth Quarter and Fiscal 2003 Year End Results." The press release disclosed that net losses under GAAP were $25.7 million and $23.2 million for the quarters ended June 30, 2003 and March 31, 2003, respectively.

43.      The statements set forth above in ¶ 42 were materially false and misleading. As was ultimately disclosed in Openwave's 2006 10-K, because Openwave had backdated options, causing them to have intrinsic value on the date of grant, the Company underreported expenses. Openwave's 2006 10-K discloses that, had these options been properly accounted for, the Company would have recognized additional expenses of $10.3 million and $31.7 million, in fiscal 2003. The 2006 10-K further discloses that this amount were required to be amortized over the related service period, demonstrating that the press release understated net losses for the quarterly periods.

44.      On August 28, 2003, the Company filed with the SEC its Form 10-K for the fiscal year ended June 30, 2003 (the "2003 10-K"). The 2003 10-K disclosed that Openwave had stock-based compensation expense of $3.7 million, $14.9 million and $11.0 million, net loss of $217.0 million, $1.26 billion, and $690 million for the fiscal years ended June 30, 2003, 2002, and 2001, respectively. The 2003 10-K disclosed that Openwave had accumulated deficits of $2.54 billion and $2.32 billion on June 30, 2003 and 2002, respectively. Defendant Listwin signed the 2003 Form 10-K. The certification that Defendant Listwin signed pursuant to §906 of the Sarbanes-Act of 2002,

14

which was included in the 2003 10-K, falsely stated that information contained in 2003 10-K fairly presents in all material respects the financial condition and results of operations of Openwave. Defendant Listwin also signed a certification pursuant to §302 of the Sarbanes-Oxley Act of 2002, which was included in the 2003 10-K, which states that he had reviewed the 2003 10-K and that "[biased on my knowledge, this annual report doesnot contain any untrue statement of a material fact or omit to state a material fact necessary to make the statements made, in light of the circumstances under which such statements were made, not misleading with respect to the period covered by this annual report" and "[biased on my knowledge, the financial statements, and other financial information included in this annual report, fairly present in all material respects the financial condition, results of operations and cash flows of the registrant as of, and for, the periods presented in this annual report."

45.     The statements set forth above in ¶ 44 were materially false and misleading. As was ultimately disclosed in Openwave's 2006 10-K, because Openwave had backdated options, causing them to have intrinsic value on the date of grant, the Company underreported expenses. Openwave's 2006 10-K discloses that, had these options been properly accounted for, the Company would have recognized additional expenses of $10.3 million, $31.7 million, and $135.7 million, in fiscal 2003, 2002, and 2001, respectively. Because Openwave did not properly account for these expenses in the periods in which they should have been incurred, its accumulated deficit was understated by the cumulative amount of those expenses in each period (i.e. $3.1 million, $138.7 million, $170.1 million, and $180.5 million in fiscal 2000 through 2003, respectively). The Sarbanes-Oxley certifications were misleading because Openwave underreported its expenses, net loss, and accumulated deficit and therefore its financial statements contained untrue statements and omissions of material fact and did not fairly present its financial condition and results of operations.

46.     On October 28, 2003, the Company issued a press release entitled "Openwave Reports First Quarter Fiscal 2004 Results." The press release disclosed that net loss under GAAP was $14.0 million and $25.7 million for the quarters ended September 30, 2003 and June 30, 2003, respectively.

47.     The statements set forth above in ¶ 46 were materially false and misleading. As was ultimately disclosed in Openwave's 2006 10-K, because Openwave had backdated options, causing them to have intrinsic value on the date of grant, the Company underreported expenses. Openwave's 2006 10-K discloses that, had these options been properly accounted for, the Company would have recognized additional expenses of $0.6 million and $10.3 million, in fiscal 2004 and 2003, respectively. The 2006 10-K further states that such amounts were required to be amortized over the related service period, demonstrating that the press release understated Openwave's net losses for the quarterly periods.

48.     On November 14, 2003, the Company filed with the SEC its Form 10-Q for the fiscal quarter ended September 30, 2003 (the "IQ 2004 10-Q"). The IQ 2004 10-Q disclosed that Openwave had stock-based compensation expense of $0.7 million and $0.8 million and net loss of $14.0 million and $138.5 million for the three months ended September 30, 2003 and 2002, respectively. The 1Q 2004 10-Q also disclosed that Openwave had an accumulated deficit of $2.55 billion and $2.54 billion on September 30, 2003 and June 30, 2003, respectively. The certification that Defendant Listwin signed pursuant to §906 of the Sarbanes-Act of 2002, which was included in the IQ 2004 10-Q, falsely stated that information contained in IQ 2004 10-Q fairly presents in all material respects the financial condition and results of operations of Openwave. Defendant Listwin also signed a certification pursuant to §302 of the Sarbanes-Oxley Act of 2002, which was included in the IQ 2004 10-Q, which stated that he had reviewed the IQ 2004 10-Q and that "[biased on my

knowledge, this quarterly report does not contain any untrue statement of a material fact or omit to state a material fact necessary to make the statements made, in light of the circumstances under which such statements were made, not misleading with respect to the period covered by this quarterly report" and "[biased on my knowledge, the financial statements, and other financial information included in this quarterly report, fairly present in all material respects the financial condition, results of operations and cash flows of the registrant as of, and for, the periods presented in this quarterly report."

49.     The statements set forth above in ¶48 were materially false and misleading. As was ultimately disclosed in Openwave's 2006 10-K, because Openwave had backdated options, causing them to have intrinsic value on the date of grant, the Company underreported expenses. Openwave's 2006 10-K discloses that, had these options been properly accounted for, the Company would have recognized additional expenses of $0.6 million and $10.3 million, in fiscal 2004 and 2003, respectively. The 2006 10-K further discloses that such amounts were required to be amortized over the related service period, demonstrating that the IQ 2004 10-Q understated net losses for the quarterly periods. Because Openwave did not properly account for these expenses in the periods in which they should have been incurred, its accumulated deficit was understated by the cumulative amount of those expenses for each full fiscal year (i.e. $3.1 million, $138.5 million, $170.1 million, and $180.5 million in fiscal 2000 through 2003, respectively) and understated by between $180.5 million and $181.0 million at September 30, 2003. The Sarbanes-Oxley certifications signed by Listwin were materially false and misleading because Openwave underreported its expenses, net loss, and accumulated deficit and therefore its financial statements contained untrue statements and omissions of material fact and did not fairly present its financial condition and results of operations.

50.     On January 21, 2004, the Company issued a press release entitled "Openwave

Reports Second Quarter Fiscal 2004 Results." The press release disclosed that net loss was $9.4 million, $14.0 million, and $29.5 million for the quarters ended December 31, 2003m September 30, 2003, and December 31, 2002, respectively.

51.     The statements set forth above in ¶ 49 were materially false and misleading. As was ultimately disclosed in Openwave's 2006 10-K, because Openwave had backdated options, causing them to have intrinsic value on the date of grant, the Company underreported expenses. Openwave's 2006 10-K discloses that, had these options been properly accounted for, the Company would have recognized additional expenses of $0.6 million and $10.3 million, in fiscal 2004 and 2003, respectively. The 2006 10-K further states that such amounts were required to be amortized over the related service period, demonstrating that the press release understated Openwave's net losses for the quarterly periods.

52.     On February 17, 2004, the Company filed with the SEC its Form 10-Q for the fiscal quarter ended December 31, 2003 (the "2Q 2004 10-Q"). The 2Q 2004 10-Q disclosed that Openwave had stock-based compensation expense of $0.8 million and $1.3 million and net loss of $9.4 million and $29.5 million for the three months ended December 31, 2003 and 2002, respectively. The 2Q 2004 10-Q also disclosed that Openwave had an accumulated deficit of $2.56 billion and $2.54 billion on December 31, 2003 and June 30, 2003, respectively. The certification that Defendant Listwin signed pursuant to §906 of the Sarbanes-Act of 2002, which was included in the 2Q 2004 10-Q, falsely stated that information contained in 2Q 2004 10-Q fairly presents in all material respects the financial condition and results of operations of Openwave. Defendant Listwin also signed a certification pursuant to §302 of the Sarbanes-Oxley Act of 2002, which was included in the 2Q 2004 10-Q, which stated that he had reviewed the 2Q 2004 10-Q and that "[biased on my knowledge, this quarterly report does not contain any untrue statement of a material fact or omit to

state a material fact necessary to make the statements made, in light of the circumstances under which such statements were made, not misleading with respect to the period covered by this quarterly report" and "[biased on my knowledge, the financial statements, and other financial information included in this quarterly report, fairly present in all material respects the financial condition, results of operations and cash flows of the registrant as of, and for, the periods presented in this quarterly report."

53.     The statements set forth above in ¶ 52 were materially false and misleading. As was ultimately disclosed in Openwave's 2006 10-K, because Openwave had backdated options, causing them to have intrinsic value on the date of grant, the Company underreported expenses. Openwave's 2006 10-K discloses that, had these options been properly accounted for, the Company would have recognized additional expenses of $0.6 million and $10.3 million, in fiscal 2004 and 2003, respectively. The 2006 10-K further discloses that such amounts were required to be amortized over the related service period, demonstrating that the 2Q 2004 10-Q understated net losses for the quarterly periods. Because Openwave did not properly account for these expenses in the periods in which they should have been incurred, its accumulated deficit was understated by the cumulative amount of those expenses for each full fiscal year (i.e. $3.1 million, $138.5 million, $170.1 million, and $180.5 million in fiscal 2000 through 2003, respectively) and understated by between $180.5 million and $181.0 million at December 31, 2003. The Sarbanes-Oxley certifications signed by Listwin were materially false and misleading because Openwave underreported its expenses, net loss, and accumulated deficit and therefore its financial statements contained untrue statements and omissions of material fact and did not fairly present its financial condition and results of operations.

54.     On April 28, 2004, the Company issued a press release entitled "Openwave Reports Third Quarter Fiscal 2004 Results." The press release disclosed that net loss was $5.7 million, $9.4

19

million, and $23.2 million for the quarters ended March 31, 2004, December 31, 2003, and March 31, 2003, respectively.

55.     The statements set forth above in ¶ 55 were materially false and misleading. As was ultimately disclosed in Openwave's 2006 10-K, because Openwave had backdated options, causing them to have intrinsic value on the date of grant, the Company underreported expenses. Openwave's 2006 10-K discloses that, had these options been properly accounted for, the Company would have recognized additional expenses of $0.6 million and $10.3 million, in fiscal 2004 and 2003, respectively. The 2006 10-K further states that such amounts were required to be amortized over the related service period, demonstrating that the press release understated Openwave's net losses for the quarterly periods.

56.     On May 12, 2004, the Company filed with the SEC its Form 10-Q for the fiscal quarter ended March 31, 2004 (the "3Q 2004 10-Q"). The 3Q 2004 10-Q disclosed that Openwave had stock-based compensation expense of $0.9 million and $.7 million and net loss of $5.7 million and $23.2 million for the three months ended March 31, 2004 and 2003, respectively. The 3Q 2004 10-Q also disclosed that Openwave had an accumulated deficit of $2.57 billion and $2.54 billion on March 31, 2004 and June 30, 2003, respectively. The certification that Defendant Listwin signed pursuant to §906 of the Sarbanes-Act of 2002, which was included in the 3Q 2004 10-Q, falsely stated that information contained in 3Q 2004 10-Q fairly presents in all material respects the financial condition and results of operations of Openwave. Defendant Listwin also signed a certification pursuant to §302 of the Sarbanes-Oxley Act of 2002, which was included in the 3Q 2004 10-Q, which stated that he had reviewed the 3Q 2004 10-Q and that "[biased on my knowledge, this quarterly report does not contain any untrue statement of a material fact or omit to state a material fact necessary to make the statements made, in light of the circumstances under

which such statements were made, not misleading with respect to the period covered by this quarterly report" and "[biased on my knowledge, the financial statements, and other financial information included in this quarterly report, fairly present in all material respects the financial condition, results of operations and cash flows of the registrant as of, and for, the periods presented in this quarterly report."

57.     The statements set forth above in ¶ 56 were materially false and misleading. As was ultimately disclosed in Openwave's 2006 10-K, because Openwave had backdated options, causing them to have intrinsic value on the date of grant, the Company underreported expenses. Openwave's 2006 10-K discloses that, had these options been properly accounted for, the Company would have recognized additional expenses of $0.6 million and $10.3 million, in fiscal 2004 and 2003, respectively. The 2006 10-K further discloses that such amounts were required to be amortized over the related service period, demonstrating that the 3Q 2004 10-Q understated net losses for the quarterly periods. Because Openwave did not properly account for these expenses in the periods in which they should have been incurred, its accumulated deficit was understated by the cumulative amount of those expenses for each full fiscal year (i.e. $3.1 million, $138.5 million, $170.1 million, and $180.5 million in fiscal 2000 through 2003, respectively) and understated by between $180.5 million and $181.0 million at March 31, 2004. The Sarbanes-Oxley certifications signed by Listwin were materially false and misleading because Openwave underreported its expenses, net loss, and accumulated deficit and therefore its financial statements contained untrue statements and omissions of material fact and did not fairly present its financial condition and results of operations.

58.     On July 28, 2004, the Company issued a press release entitled "Openwave Reports Fourth Quarter Fiscal 2004 Results." The press release disclosed that net loss was $737,000, $5.7

million, and $25.7 million for the quarters ended June 30, 2004, March 31, 2004, and June 30, 2003, respectively.

59.     The statements set forth above in ¶ 58 were materially false and misleading. As was ultimately disclosed in Openwave's 2006 10-K, because Openwave had backdated options, causing them to have intrinsic value on the date of grant, the Company underreported expenses. Openwave's 2006 10-K discloses that, had these options been properly accounted for, the Company would have recognized additional expenses of $0.6 million and $10.3 million, in fiscal 2004 and 2003, respectively. The 2006 10-K further states that such amounts were required to be amortized over the related service period, demonstrating that the press release understated Openwave's net losses for the quarterly periods.

60.     On September 13, 2004, the Company filed with the SEC its Form10-K for the fiscal year ended June 30, 2004 (the "2004 10-K"). The 2004 10-K disclosed that Openwave had stock-based compensation expense of $3.2 million, $3.7 million, and $14.9 million and net loss of $29.9 million, $217.0 million, and $1.26 billion for the fiscal years ended June 30, 2004, 2003, and 2002, respectively. The 2004 10-K disclosed that Openwave had accumulated deficit of $2.57 billion and $2.54 billion on June 30, 2004 and 2003, respectively. Defendant Listwin signed the 2004 Form 10-K. The certification that Defendant Listwin signed pursuant to §906 of the Sarbanes-Act of 2002, which was included in the 2004 10-K, falsely stated that information contained in 2004 10-K fairly presents in all material respects the financial condition and results of operations of Openwave. Defendant Listwin also signed a certification pursuant to §302 of the Sarbanes-Oxley Act of 2002, which was included in the 2004 10-K, which states that he had reviewed the 2004 10-K and that "[b]ased on my knowledge, this annual report does not contain any untrue statement of a material fact or omit to state a material fact necessary to make the statements made, in light of the

circumstances under which such statements were made, not misleading with respect to the period covered by this annual report" and "[b]ased on my knowledge, the financial statements, and other financial information included in this annual report, fairly present in all material respects the financial condition, results of operations and cash flows of the registrant as of, and for, the periods presented in this annual report."

61.     The statements set forth above in ¶ 60 were materially false and misleading. As was ultimately disclosed in Openwave's 2006 10-K, because Openwave had backdated options, causing them to have intrinsic value on the date of grant, the Company underreported expenses. Openwave's 2006 10-K discloses that, had these options been properly accounted for, the Company would have recognized additional expenses of $0.6 million, $10.3 million, and $31.7 million in fiscal 2004, 2003, and 2002, respectively. Because Openwave did not properly account for these expenses in the periods in which they should have been incurred, its accumulated deficit was understated by the cumulative amount of those expenses in each period (i.e. $3.1 million, $138.7 million, $170.1 million, $180.5 million, and $181.1 million in fiscal 2000 through 2004, respectively). The Sarbanes-Oxley certifications signed by Listwin were materially false and misleading because Openwave underreported its expenses, net loss, and accumulated deficit and therefore its financial statements contained untrue statements and omissions of material fact and did not fairly present its financial condition and results of operations.

62.     On October 26, 2004, the Company issued a press release entitled "Openwave Achieves Profitability: Reports First Quarter Fiscal 2005 Results." The press release disclosed that net income (loss) on a GAAP basis was $957,000, ($737,000), and ($14.0 million) for the quarters ended September 30, 2004, June 30, 2004, and September 30, 2003, respectively.

63.     The statements set forth above in ¶ 62 were materially false and misleading. As was

ultimately disclosed in Openwave's 2006 10-K, because Openwave had backdated options, causing

them to have intrinsic value on the date of grant, the Company underreported expenses.

Openwave's 2006 10-K discloses that, had these options been properly accounted for, the Company

would have recognized additional expenses of $0.6 million and $0.6 million, in fiscal 2005 and

2004, respectively. The 2006 10-K further states that such amounts were required to be amortized

over the related service period, demonstrating that the press release understated Openwave's net

losses for the quarterly periods.

64.     On November 9, 2004, the Company filed with the SEC its Form 10-Q for the fiscal

quarter ended September 30, 2004 (the "1Q 2005 10-Q"). The 1Q 2005 10-Q disclosed that

Openwave had stock-based compensation expense of $0.6 million and $0.7 million and net income

(loss) of $1.0 million and ($14.0 million) for the three months ended September 30, 2004 and 2003,

respectively. The IQ 2005 10-Q also disclosed that Openwave had an accumulated deficit of $2.57

billion and $2.57 billion on September 30, 2004 and June 30, 2004, respectively. The certification

that Defendant Peterschmidt signed pursuant to §906 of the Sarbanes-Act of 2002, which was

included in the IQ 2005 10-Q, falsely stated that information contained in IQ 2005 10-Q fairly

presents in all material respects the financial condition and results of operations of Openwave.

Defendant Peterschmidt also signed a certification pursuant to §302 of the Sarbanes-Oxley Act of

2002, which was included in the IQ 2005 10-Q, which stated that he had reviewed the 1Q 2005 10-Q

and that "[biased on my knowledge, this quarterly report does not contain any untrue statement of a

material fact or omit to state a material fact necessary to make the statements made, in light of the

circumstances under which such statements were made, not misleading with respect to the period

covered by this quarterly report" and "[biased on my knowledge, the financial statements, and other

financial information included in this quarterly report, fairly present in all material respects the

financial condition, results of operations and cash flows of the registrant as of, and for, the periods presented in this quarterly report."

65.     The statements set forth above in ¶ 64 were materially false and misleading. As was ultimately disclosed in Openwave's 2006 10-K, because Openwave had backdated options, causing them to have intrinsic value on the date of grant, the Company underreported expenses. Openwave's 2006 10-K discloses that, had these options been properly accounted for, the Company would have recognized additional expenses of $0.6 million and $0.6 million, in fiscal 2005 and 2004, respectively. The 2006 10-K further discloses that such amounts were required to be amortized over the related service period, demonstrating that the 1Q 2005 10-Q understated net losses for the quarterly periods. Because Openwave did not properly account for these expenses in the periods in which they should have been incurred, its accumulated deficit was understated by the cumulative amount of those expenses for each full fiscal year (i.e. $3.1 million, $138.5 million, $170.1 million, $180.6 million, and $181.0 million in fiscal 2000 through 2004, respectively) and understated by between $181.0 million and $181.7 million at September 30, 2003. The Sarbanes-Oxley certifications signed by Peterschmidt were materially false and misleading because Openwave underreported its expenses, net loss, and accumulated deficit and therefore its financial statements contained untrue statements and omissions of material fact and did not fairly present its financial condition and results of operations.

66.     On January 27, 2005, the Company issued a press release entitled "Openwave Achieves 30% Revenue Growth in Second Quarter." The press release disclosed that net income (loss) on a GAAP basis was $1.9 million, $957,000, and ($9.4 million) for the quarters ended December 31, 2004, September 30, 2004, and December 31, 2003, respectively.

67.     The statements set forth above in ¶ 66 were materially false and misleading. As was

ultimately disclosed in Openwave's 2006 10-K, because Openwave had backdated options, causing them to have intrinsic value on the date of grant, the Company underreported expenses. Openwave's 2006 10-K discloses that, had these options been properly accounted for, the Company would have recognized additional expenses of $0.6 million and $0.6 million, in fiscal 2005 and 2004, respectively. The 2006 10-K further states that such amounts were required to be amortized over the related service period, demonstrating that the press release understated Openwave's net losses for the quarterly periods.

68.     On February 9, 2005, the Company filed with the SEC its Form 10-Q for the fiscal quarter ended December 31, 2004 (the "2Q 2005 10-Q"). The 2Q 2005 10-Q disclosed that Openwave had stock-based compensation expense of $1.2 million and $0.8 million and net income (loss) of $1.9 million and ($9.4 million) for the three months ended December 31, 2004 and 2003, respectively. The 2Q 2005 10-Q also disclosed that Openwave had an accumulated deficit of $2.56 billion and $2.57 billion on December 31, 2004 and June 30, 2004, respectively. The certification that Defendant Peterschmidt signed pursuant to §906 of the Sarbanes-Act of 2002, which was included in the 2Q 2005 10-Q, falsely stated that information contained in 2Q 2005 10-Q fairly presents in all material respects the financial condition and results of operations of Openwave. Defendant Peterschmidt also signed a certification pursuant to §302 of the Sarbanes-Oxley Act of 2002, which was included in the 2Q 2005 10-Q, which stated that he had reviewed the 2Q 2005 10-Q and that "[biased on my knowledge, this quarterly report does not contain any untrue statement of a material fact or omit to state a material fact necessary to make the statements made, in light of the circumstances under which such statements were made, not misleading with respect to the period covered by this quarterly report" and "[biased on my knowledge, the financial statements, and other financial information included in this quarterly report, fairly present in all material respects the

financial condition, results of operations and cash flows of the registrant as of, and for, the periods presented in this quarterly report."

69.     The statements set forth above in ¶ 68 were materially false and misleading. As was ultimately disclosed in Openwave's 2006 10-K, because Openwave had backdated options, causing them to have intrinsic value on the date of grant, the Company underreported expenses. Openwave's 2006 10-K discloses that, had these options been properly accounted for, the Company would have recognized additional expenses of $0.6 million and $0.6 million, in fiscal 2005 and 2004, respectively. The 2006 10-K further discloses that such amounts were required to be amortized over the related service period, demonstrating that the 2Q 2005 10-Q understated net losses for the quarterly periods. Because Openwave did not properly account for these expenses in the periods in which they should have been incurred, its accumulated deficit was understated by the cumulative amount of those expenses for each full fiscal year (i.e. $3.1 million, $138.5 million, $170.1 million, $180.6 million, and $181.0 million in fiscal 2000 through 2004, respectively) and understated by between $181.0 million and $181.7 million at December 31, 2003. The Sarbanes-Oxley certifications signed by Peterschmidt were materially false and misleading because Openwave underreported its expenses, net loss, and accumulated deficit and therefore its financial statements contained untrue statements and omissions of material fact and did not fairly present its financial condition and results of operations.

70.     On April 27, 2005, the Company issued a press release entitled "Openwave Grows Revenue 43% in Third Quarter" The press release disclosed that net income (loss) on a GAAP basis was ($2.6 million), $1.9 million, ($5.7 million) for the quarters ended March 31, 2005, December 31, 2004, and March 31, 2004, respectively.

71.     The statements set forth above in ¶ 70 were materially false and misleading. As was

ultimately disclosed in Openwave's 2006 10-K, because Openwave had backdated options, causing them to have intrinsic value on the date of grant, the Company underreported expenses. Openwave's 2006 10-K discloses that, had these options been properly accounted for, the Company would have recognized additional expenses of $0.6 million and $0.6 million, in fiscal 2005 and 2004, respectively. The 2006 10-K further states that such amounts were required to be amortized over the related service period, demonstrating that the press release understated Openwave's net losses for the quarterly periods.

72.     On May 9, 2005, the Company filed with the SEC its Form 10-Q for the fiscal quarter ended March 31, 2005 (the "3Q 2005 10-Q"). The 3Q 2005 10-Q disclosed that Openwave had stock-based compensation expense of $1.0 million and $0.9 million and net income (loss) of $1.4 million and $1.9 million for the three months ended March 31, 2005 and 2004, respectively. The 3Q 2005 10-Q also disclosed that Openwave had an accumulated deficit of $2.57 billion and $2.57 billion on March 31, 2005 and June 30, 2004, respectively. The certification that Defendant Peterschmidt signed pursuant to §906 of the Sarbanes-Act of 2002, which was included in the 2Q 2005 10-Q, falsely stated that information contained in 3Q 2005 10-Q fairly presents in all material respects the financial condition and results of operations of Openwave. Defendant Peterschmidt also signed a certification pursuant to §302 of the Sarbanes-Oxley Act of 2002, which was included in the 3Q 2005 10-Q, which stated that he had reviewed the 3Q 2005 10-Q and that "[biased on my knowledge, this quarterly report does not contain any untrue statement of a material fact or omit to state a material fact necessary to make the statements made, in light of the circumstances under which such statements were made, not misleading with respect to the period covered by this quarterly report" and "[biased on my knowledge, the financial statements, and other financial information included in this quarterly report, fairly present in all material respects the financial

condition, results of operations and cash flows of the registrant as of, and for, the periods presented in this quarterly report."

73.     The statements set forth above in ¶ 72 were materially false and misleading. As was ultimately disclosed in Openwave's 2006 10-K, because Openwave had backdated options, causing them to have intrinsic value on the date of grant, the Company underreported expenses. Openwave's 2006 10-K discloses that, had these options been properly accounted for, the Company would have recognized additional expenses of $0.6 million and $0.6 million, in fiscal 2005 and 2004, respectively. The 2006 10-K further discloses that such amounts were required to be amortized over the related service period, demonstrating that the 3Q 2005 10-Q understated net losses for the quarterly periods. Because Openwave did not properly account for these expenses in the periods in which they should have been incurred, its accumulated deficit was understated by the cumulative amount of those expenses for each full fiscal year (i.e. $3.1 million, $138.5 million, $170.1 million, $180.6 million, and $181.0 million in fiscal 2000 through 2004, respectively) and understated by between $181.0 million and $181.7 million at March 31, 2005. The Sarbanes-Oxley certifications signed by Peterschmidt were materially false and misleading because Openwave underreported its expenses, net loss, and accumulated deficit and therefore its financial statements contained untrue statements and omissions of material fact and did not fairly present its financial condition and results of operations.

74.     On August 4, 2005, the Company issued a press release entitled "Openwave Reports Fourth Quarter Financial Results" The press release disclosed that net loss on a GAAP basis was $62.3 million and $0.7 million for the quarters ended June 30, 2005 and June 30, 2004, respectively.

75.     The statements set forth above in ¶ 74 were materially false and misleading. As was

ultimately disclosed in Openwave's 2006 10-K, because Openwave had backdated options, causing them to have intrinsic value on the date of grant, the Company underreported expenses. Openwave's 2006 10-K discloses that, had these options been properly accounted for, the Company would have recognized additional expenses of $0.6 million and $0.6 million, in fiscal 2005 and 2004, respectively. The 2006 10-K further states that such amounts were required to be amortized over the related service period, demonstrating that the press release understated Openwave's net losses for the quarterly periods.

76.     On September 12, 2005, the Company filed with the SEC its Forml0-K for the fiscal year ended June 30, 2005 (the "2005 10-K"). The 2005 10-K disclosed that Openwave had stock-based compensation expense of $5.2 million, $3.2 million, and $3.7 million, and net loss of $62.1 million, $29.9 million, and $217.0 for the fiscal years ended June 30, 2005 and 2004, respectively. The 2005 10-K also disclosed that Openwave had accumulated deficit of $2.63 billion and $2.57 billion on June 30, 2005 and 2004, respectively. Defendant Peterschmidt signed the 2005 Form 10-K. The certification that Defendants Peterschmidt signed pursuant to §906 of the Sarbanes-Act of 2002, which was included in the 2005 10-K, falsely stated that information contained in 2005 10-K fairly presents in all material respects the financial condition and results of operations of Openwave. Defendant Peterschmidt also signed a certification pursuant to §302 of the Sarbanes-Oxley Act of 2002, which was included in the 2005 10-K, which states that he had reviewed the 2005 10-K and that "[biased on my knowledge, this annual report does not contain any untrue statement of a material fact or omit to state a material fact necessary to make the statements made, in light of the circumstances under which such statements were made, not misleading with respect to the period covered by this annual report" and "[biased on my knowledge, the financial statements, and other financial information included in this annual

report, fairly present in all material respects the financial condition, results of operations and cash flows of the registrant as of, and for, the periods presented in this annual report."

77.     The statements set forth above in X76 were materially false and misleading. As was ultimately disclosed in Openwave's 2006 10-K, because Openwave had backdated options, causing them to have intrinsic value on the date of grant, the Company underreported expenses. Openwave's 2006 10-K discloses that, had these options been properly accounted for, the Company would have recognized additional expenses of $0.6 million, $0.6 million, and $10.3 million in fiscal 2005, 2004, and 2003, respectively. Because Openwave did not properly account for these expenses in the periods in which they should have been incurred, its accumulated deficit was understated by the cumulative amount of those expenses in each period (i.e. $3.1 million, $138.7 million, $170.1 million, $180.5 million, $181.1 million, and $181.7 million in fiscal 2000 through 2005, respectively). The Sarbanes-Oxley certifications signed by Peterschmidt were materially false and misleading because Openwave underreported its expenses, net loss, and accumulated deficit and therefore its financial statements contained untrue statements and omissions of material fact and did not fairly present its financial condition and results of operations.

78.     On October 26, 2005, the Company issued a press release entitled "Openwave Reports 24% Year Over Year Quarterly Revenue Growth." The press release disclosed that net income (loss) on a GAAP basis was ($7.7 million), $1.0 million, ($62.3 million) for the quarters ended September 30, 2005, June 30, 2005, and September 30, 2004, respectively.

79.     The statements set forth above in ¶ 78 were materially false and misleading. As was ultimately disclosed in Openwave's 2006 10-K, because Openwave had backdated options, causing them to have intrinsic value on the date of grant, the Company underreported expenses. Openwave's 2006 10-K discloses that, had these options been properly accounted for, the Company would have

recognized additional expenses of $0.6 million in fiscal 2005. The 2006 10-K further states that this amount was required to be amortized over the related service period, demonstrating that the press release understated Openwave's net losses for the fiscal 2005 quarterly period. 80. On November 9, 2005, the Company filed with the SEC its Form 10-Q for the fiscal quarter ended September 30, 2005 (the "I Q 2006 10-Q"). The IQ 2006 10-Q disclosed that Openwave had net income (loss) of $7.7 million and $1.0 million for the three months ended September 30, 2005 and 2004, respectively. The IQ 2006 10-Q also disclosed that Openwave had an accumulated deficit of $2.64 billion and $2.63 billion on September 30, 2005 and June 30, 2005, respectively. Defendant Covert signed the 1Q 2006 10-Q. The certification that Defendants Peterschmidt and Covert signed pursuant to §906 of the Sarbanes-Act of 2002, which were included in the 1Q 2006 10-Q, falsely stated that information contained in IQ 2006 10-Q fairly presents in all material respects the financial condition and results of operations of Openwave. Defendants Peterschmidt and Covert also each signed certifications pursuant to §302 of the Sarbanes-Oxley Act of 2002, which were included in the 1Q 2006 10-Q, which stated that they had each reviewed the IQ 2006 10-Q and that "[b]ased on my knowledge, this quarterly report does not contain any untrue statement of a material fact or omit to state a material fact necessary to make the statements made, in light of the circumstances under which such statements were made, not misleading with respect to the period covered by this quarterly report" and "[b]ased on my knowledge, the financial statements, and other financial information included in this quarterly report, fairly present in all material respects the financial. condition, results of operations and cash flows of the registrant as of, and for, the periods presented in this quarterly report."

81.     The statements set forth above in 1 80 were materially false and misleading. As was ultimately disclosed in Openwave's 2006 10-K, because Openwave had backdated options,

causing them to have intrinsic value on the date of grant, the Company underreported expenses. Openwave's 2006 10-K discloses that, had these options been properly accounted for, the Company would have recognized additional expenses of $0.6 million in fiscal 2005. The 2006 10-K further discloses that such amounts were required to be amortized over the related service period, demonstrating that the IQ 2006 10-Q understated net losses for the fiscal 2005 quarterly period. Because Openwave did not properly account for these expenses in the periods in which they should have been incurred, its accumulated deficit was understated by the cumulative amount of those expenses for each full fiscal year (i.e. $3.1 million, $138.5 million, $170.1 million, $180.6 million, $181.0 million, and $181.7 million) in fiscal 2000 through 2005, respectively) and understated by between $181.0 million and $181.7 million at September 30, 2004. The Sarbanes-Oxley certifications signed by Peterschmidt and Covert were materially false and misleading because Openwave underreported its expenses, net loss, and accumulated deficit and therefore its financial statements contained untrue statements and omissions of material fact and did not fairly present its financial condition and results of operations.

82.     On December 1, 2005, the Company filed with the SEC a shelf Registration Statement on Form S-3ASR, and also filed a Preliminary Prospectus Supplement which constituted a part of the Registration Statement. The Registration Statement became effective on December 7, 2005. On December 8, 2005, the Company filed with the SEC a Prospectus Supplement (the "Prospectus") that also constituted part of the Registration Statement. The Registration Statement, Preliminary Prospectus Supplement, and the Prospectus contained a summary of consolidated financial data for the fiscal years ended June 30, 2003 through 2005. The Registration Statement, Preliminary Prospectus Supplement, and Prospectus also incorporated by reference the Company's annual report on Form 10-K for the year ended June 30, 2005. The consolidated financial data and

incorporated Form 10-K for the year ended June 30, 2005 contained in the Registration Statement,

Preliminary Prospectus Supplement, and Prospectus were all materially false and misleading and

presented in violation of GAAP due to the Company's improper accounting for backdated stock

options as set forth in ¶ 76 and 77 above.

83.     Defendants Peterschmidt and Covert signed the Registration Statement.

84.     On January 26, 2006, the Company issued a press release entitled "Openwave

Reports Record Earnings." The press release disclosed that net income (loss) on a GAAP basis was

$8.4 million, $1.9 million, ($7.7 million) for the quarters ended December 31, 2005, September 30,

2005, and December 31, 2004, respectively.

85.     The statements set forth above in ¶ 84 were materially false and misleading. As was

ultimately disclosed in Openwave's 2006 10-K, because Openwave had backdated options, causing

them to have intrinsic value on the date of grant, the Company underreported expenses. Openwave's

2006 10-K discloses that, had these options been properly accounted for, the Company would have

recognized additional expenses of $0.6 million in fiscal 2005. The 2006 10-K further states that this

amount was required to be amortized over the related service period, demonstrating that the press

release understated Openwave's net losses for the fiscal 2005 quarterly period.

86.     On February 8, 2006, the Company filed with the SEC its Form 10-Q for the fiscal

quarter ended December 31, 2005 (the "2Q 2006 10-Q"). The 2Q 2006 10-Q disclosed that

Openwave had net income of $8.4 million and $1.9 million for the three months ended December

31, 2005 and 2004, respectively. The 2Q 2006 10-Q disclosed that Openwave had an accumulated

deficit of $2.63 billion and $2.63 billion on December 31, 2005 and June 30, 2005, respectively.

Defendant Covert signed the 2Q 2006 10-Q. The certification that Defendants Peterschmidt and

Covert signed pursuant to §906 of the Sarbanes-Act of 2002, which were included in the 2Q 2006

10-Q, falsely stated that information contained in 2Q 2006 10-Q fairly presents in all material

respects the financial condition and results of operations of Openwave. Defendants Peterschmidt

and Covert also each signed certifications pursuant to §302 of the Sarbanes-Oxley Act of 2002,

which were included in the 2Q 2006 10-Q, which stated that they had each reviewed the 2Q 2006

10-Q and that "[biased on my knowledge, this quarterly report does not contain any untrue

statement of a material fact or omit to state a material fact necessary to make the statements made,

in light of the circumstances under which such statements were made, not misleading with respect

to the period covered by this quarterly report" and "[b]ased on my knowledge, the financial

statements, and other financial information included in this quarterly report, fairly present in all

material respects the financial condition, results of operations and cash flows of the registrant as of,

and for, the periods presented in this quarterly report."

87.     The statements set forth above in ¶ 86 were materially false and misleading. As was

ultimately disclosed in Openwave's 2006 10-K, because Openwave had backdated options, causing

them to have intrinsic value on the date of grant, the Company underreported expenses.

Openwave's 2006 10-K discloses that, had these options been properly accounted for, the Company

would have recognized additional expenses of $0.6 million in fiscal 2005. The 2006 10-K further

discloses that such amounts were required to be amortized over the related service period,

demonstrating that the 2Q 2006 10-Q understated net losses for the fiscal 2005 quarterly period.

Because Openwave did not properly account for these expenses in the periods in which they should

have been incurred, its accumulated deficit was understated by the cumulative amount of those

expenses for each full fiscal year (i.e. $3.1 million, $138.5 million, $170.1 million, $180.6 million,

$181.0 million, and $181.7 million) in fiscal 2000 through 2005, respectively) and understated by

between $181.0 million and $181.7 million at December 31, 2004. The Sarbanes-Oxley

certifications signed by Peterschmidt and Covert were materially false and misleading because

Openwave underreported its expenses, net loss, and accumulated deficit and therefore its financial statements contained untrue statements and omissions of material fact and did not fairly present its financial condition and results of operations.

88.     On April 27, 2006, the Company issued a press release entitled "Openwave Reports Solid Third Quarter Revenue and Earnings In Line With Projections." The press release disclosed that net income (loss) on a GAAP basis was $9.6 million, ($2.6 million), $8.4 million for the quarters ended March 31, 2006, March 31, 2005, and December 31, 2005, respectively.

89.     The statements set forth above in ¶ 88 were materially false and misleading. As was ultimately disclosed in Openwave's 2006 10-K, because Openwave had backdated options, causing them to have intrinsic value on the date of grant, the Company underreported expenses. Openwave's 2006 10-K discloses that, had these options been properly accounted for, the Company would have recognized additional expenses of $0.6 million in fiscal 2005. The 2006 10-K further states that this amount was required to be amortized over the related service period, demonstrating that the press release understated Openwave's net losses for the fiscal 2005 quarterly period.

90.     On May 10, 2006, the Company filed with the SEC its form 10-Q for the fiscal quarter ended March 31, 2006 (the "3Q 2006 10-Q"). The 3Q 2006 10-Q disclosed that Openwave had net income of $9.6 million and $2.6 million for the three months ended March 31, 2006 and 2005, respectively. The 2Q 2006 10-Q also disclosed that Openwave had an accumulated deficit of $2.62 billion and $2.63 billion on March 31, 2006 and June 30, 2005, respectively. Defendant Covert signed the 3Q 2006 10-Q. The certification that Defendants Peterschmidt and Covert signed pursuant to §906 of the Sarbanes-Act of 2002, which were included in the 3Q 2006 10-Q, falsely stated that information contained in 3Q 2006 10-Q fairly presents in all material respects the financial condition and results of operations of Openwave. Defendants Peterschmidt and Covert also

each signed certifications pursuant to §302 of the Sarbanes-Oxley Act of 2002, which were included

in the 3Q 2006 10-Q, which stated that they had each reviewed the 3Q 2006 10-Q and that "[biased

on my knowledge, this quarterly report does not contain any untrue statement of a material fact or

omit to state a material fact necessary to make the statements made, in light of the circumstances

under which such statements were made, not misleading with respect to the period covered by this

quarterly report" and "[biased on my knowledge, the financial statements, and other financial

information included in this quarterly report, fairly present in all material respects the financial

condition, results of operations and cash flows of the registrant as of, and for, the periods presented

in this quarterly report." The statements set forth above in ¶ 90 were materially false and misleading.

As was ultimately disclosed in Openwave's 2006 10-K, because Openwave had backdated options,

causing them to have intrinsic value on the date of grant, the Company underreported expenses.

Openwave's 2006 10-K discloses that, had these options been properly accounted for, the Company

would have recognized additional expenses of $0.6 million in fiscal 2005. The 2006 10-K further

discloses that such amounts were required to be amortized over the related service period,

demonstrating that the 3Q 2006 10-Q understated net losses for the fiscal 2005 quarterly period.

Because Openwave did not properly account for these expenses in the periods in which they should

have been incurred, its accumulated deficit was understated by the cumulative amount of those

expenses for each full fiscal year (i.e. $3.1 million, $138.5 million, $170.1 million, $180.6 million,

$181.0 million, and $181.7 million in fiscal 2000 through 2005, respectively) and understated by

between $181.0 million and $181.7 million at March 31, 2005. The Sarbanes-Oxley certifications

signed by Peterschmidt and Covert were materially false and misleading because Openwave

underreported its expenses, net loss, and accumulated deficit and therefore its financial statements

contained untrue statements and omissions of material fact and did not fairly present its financial

condition and results of operations.

## THE TRUTH BEGINS TO EMERGE

91.     On May 16, 2006, the investing public began to learn the truth about Openwave's improper stock option-related practices when the Center for Financial Research and Analysis ("CFRA") published a report on stock option backdating which listed Openwave as a company at risk for such practices. News of that CFRA report caused the Company's stock price to drop from a closing price of $15.78 per share on May 16, 2006 to $14.30 on May 17, 2006, a decline of $1.48 per s h e  or 9.3%. Further disclosures resulting in stock price declines followed shortly thereafter.

93.     On May 22, 2006, Openwave issued a press release announcing that the SEC had opened an informal inquiry into the Company's past stock option grants. News of the SEC inquiry caused the Company's stock price to drop from a closing price of $15.37 per share on Friday, May 19, 2006 to $14.68 on May 22, 2006, a decline of 4.5% per share.

94.     On July 5, 2006, after the close of the market, Openwave filed with the SEC a Regulation FD disclosure on Form 8-K stating that it had received subpoenas from the United States Attorneys for the Northern District of California and for the Southern District of New York requesting documents relating to the Company's historical stock option practices. On this news, Openwave's stock price suffered significantly, declining from a closing price of $11.47 per share on July 5, 2006, to a closing price of $7.77 per share on July 6, 2006, representing a decline of $3.70 per share, or 32%.

95.     On October 26, 2006, in a press release reporting financial results for its fiscal 2007 first quarter ended September 30, 2006, Openwave admitted that "the measurement dates for financial accounting purposes for certain stock option grants differ from recorded grant dates for certain awards." On this news, Openwave's stock price declined from a closing price of $9.56 per

share on October 26, 2006 to $8.51 per share on October 27, 2006, a decline of 11.0%.

96.     The Company subsequently provided additional details on the exact value of the

restatement that would be required to correctly report its options grants. On December 1, 2006, in

both a press release and in the Company's 2006 10-K, Openwave explained that a Special

Committee of its Board of Directors that had been established to investigate the circumstances

concerning the Company's options backdating had "identified certain circumstances in which the

grant date used by the Company as the `measurement date' for accounting purposes preceded the

appropriate measurement date." The Company admitted that, because of this backdating, the

financial statements that the Company filed with the SEC between fiscal 1999 and fiscal 2005 could

not be relied upon. Finally, the press release and Form 10-K explained that *the Company would be*

*required to take additional charges of $182 million* to restate its earnings and accumulated deficit

for fiscal years 2000 through 2005. The Company thus confirmed financial statements it had issued

during the Class Period had cumulatively overstated net income.

97.     The cumulative value of the market losses suffered by investors based on

each of the corrective disclosures issued during the Class Period was approximately $490 million.

## COUNT I:
**Against Defendants Openwave, Listwin, Black, Peterschmidt and Covert for
Violations of Section 10(b) of the Exchange Act and Rule 10b-5 Promulgated
Thereunder.**

98.     Plaintiff repeats and realleges each and every allegation above as if set

forth fully herein. This Count is brought on behalf of all persons and entities who purchased or

otherwise acquired common stock of Openwave during the Class Period.

99.     Throughout the Class Period, Openwave, Defendant Listwin (from

September 2000 until November 2004), Black (from November 2000 until April 24, 2003),

Peterschmidt (from November 2004 until the end of the Class Period) and Covert (from April 2003

until the end of the Class Period), individually, and in concert, directly and indirectly, by the use

and means of instrumentalities of interstate commerce and/or of the mails, engaged and

participated in a continuous course of conduct to conceal material adverse information about

Openwave and caused Plaintiff and other members of the Class to purchase Openwave common

stock at artificially inflated prices

100.    The Defendants named in this Count employed devices, schemes, and artifices to

defraud while in possession of material, adverse non-public information and engaged in acts,

practices, and a course of conduct that included the making of, or participation in the making of,

untrue and/or misleading statements of material facts and/or omitting to state material facts

necessary in order to make the statements made about Openwave not misleading. Specifically,

Defendants initiated or pursued a scheme and course of conduct which: (i) concealed the fact that

the Company had allowed insiders to manipulate its Stock Option Plan and was misrepresenting its

financial results and (ii) deceived the investing public, including purchasers of Openwave common

stock, regarding these accounting practices and Openwave's true financial performance in an effort

to maintain an artificially high price for Openwave common stock in violation of Section 10(b) of

the Exchange Act and Rule 10b-5 promulgated thereunder. Openwave and the Individual

Defendants are sued as primary participants in the wrongful and illegal course of conduct charged

herein.

101.    The Defendants named in this Count acted with scienter throughout the Class

Period, in that they either had actual knowledge of the misrepresentations and/or omissions of

material facts set forth herein, or acted with reckless disregard for the truth in that they failed to

ascertain and to disclose the true facts, even though such facts were available to them. The

Individual Defendants constituted the senior management of the Company, and were therefore

40

directly responsible for the false and misleading statements and/or omissions disseminated to the public through press releases, news reports, and filings with the SEC.

102.    Openwave and the Individual Defendants, individually and in concert, directly and indirectly, by the use, means, instrumentalities of interstate commerce and/or of the mails, engaged and participated in a continuous course of conduct to conceal adverse material information about the options granting practices of Openwave as specified herein.

103.    As a result of the dissemination of the materially false and misleading information and failure to disclose material facts, as set forth above, the market price of Openwave common stock was artificially inflated throughout the Class Period. In ignorance of the fact that the market price of Openwave common stock was artificially inflated, and relying directly or indirectly on the false and misleading statements made by Openwave and the Individual Defendants, and/or upon the integrity of the market in which the securities traded, and/or on the absence of material adverse information that was known to or recklessly disregarded by Openwave and the Individual Defendants but not disclosed in public statements by Openwave and the Individual Defendants during the Class Period, Plaintiff and the other members of the Class purchased or otherwise acquired Openwave common stock at artificially high prices and were damaged thereby.

104.    The true facts concerning the Company's financial condition and option granting practices were material to Plaintiff and other members of the Class. Had the truth been disclosed to the market during the Class Period, Plaintiffs and the other Class members would have been unwilling to purchase the Company's securities at the prices at which they did purchase them, or at all.

105.    When the truth about the Company was revealed to investors, as described above, the artificial inflation caused by Defendants' misrepresentations and omissions was eliminated from

the price of the Company's securities, causing significant losses to Plaintiff and the other Class members. These price declines occurred as the market fully digested the impact and meaning of Defendants' improper accounting practices and adjusted the Company's securities prices to reflect the newly emerging truth about the Company's financial condition and business operations.

106.    At all relevant times, Openwave's common stock traded in an efficient market for the following reasons, among others:

      a.     Openwave common stock met the requirements for public listing and was listed and actively traded on the NASDAQ Stock Market, a highly efficient market;

      b.     As a regulated issuer, Openwave filed periodic public reports with the SEC;

      c.     Openwave regularly issued press releases that were carried by national news wires and that were publicly available and entered the public marketplace; and

      d.     Numerous research analysts and other market professionals followed and publicly reported on Openwave's public statements

107.    The market for Openwave's common stock promptly digested current information with respect to Openwave from all publicly available sources and reflected such information in the price for Openwave stock. All purchasers of Openwave's common stock during the Class Period suffered similar injury through their purchase of Openwave stock at artificially inflated prices and a presumption of reliance applies.

108.    Defendants' conduct, as alleged herein, proximately caused foreseeable losses and economic harm to Plaintiff and the other members of the Class. The totality of the circumstances surrounding the drops of Openwave's stock following the disclosures beginning on May 16, 2006 combine to negate an inference that the economic loss Plaintiff and other Class members suffered was caused by changed market conditions, macroeconomic or industry-wide factors, or Openwave

specific facts unrelated to Defendants' fraudulent conduct.

109.     By virtue of the foregoing, Defendants have violated Section I0(b) of the Exchange

Act and Rule 10b-5 promulgated thereunder.

## COUNT II:
### Against Defendants Listwin, Black, Peterschmidt, Covert for Violations of Section 20(a) of the Exchange Act.

110.     Plaintiff repeats and realleges each and every allegation above as if set forth

fully herein.

111.     Each of the Individual Defendants acted as a controlling person of the Company

within the meaning of Section 20(a) of the Exchange Act during the Class Period. The Officer

Defendants were control persons of Openwave by virtue of their positions as directors and/or as

senior officers of Openwave. Specifically:

(a)     Defendant Peterschmidt, from November 2004 onward, had the power and authority

to cause the company to engage in the wrongful conduct  complained of herein, by virtue of

his positions as Chief Executive Officer and Chairman of the Board.

(b)     Defendant Listwin, from September 2000 through November 2004, had the power

and authority to cause the company to engage in the wrongful conduct complained

of herein, by virtue of his positions as Chief Executive Officer and President.

(c)     Defendant Black, from November 2000 through April 24, 2003, had the power and

authority to cause the company to engage in the wrongful conduct complained of

herein by virtue of his positions as Senior Vice President, Corporate Affairs and

Chief Financial Officer.

(d)     Defendant Covert, from April 2003 onward, also had the power and authority to

cause the company to engage in the wrongful conduct complained of herein, by

virtue of his positions as Director, Chairman of the Audit Committee and later as Chief Financial Officer.

These Defendants were each in a position to control or influence the contents of, or otherwise cause corrective disclosures to have been made in the Company's SEC filings, along with the Company's other public statements that contained materially false and misleading statements that were disseminated during the Class Period.

112.    By reason of the wrongful conduct alleged herein, the Individual Defendants are individually liable pursuant to Section 20(a) of the Exchange Act to the same extent that Openwave is liable under Section 10(b) of the Exchange Act. As a direct and proximate result of their wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their purchases of Openwave shares during the Class Period.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for relief and judgment, as follows:

1.   Declaring this action to be a proper class action pursuant to Rule 23(a) and Rule 23(b)(3) of the Federal Rules of Civil Procedure on behalf of the Class defined herein;

2.   Awarding Plaintiff and the members of the Class compensatory damages;

3.   Awarding Plaintiff and the Class reasonable costs and expenses incurred in this action, including attorneys' fees, expert witness fees and other costs; and

4.   Awarding such other relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff hereby demands a jury trial.

DATED: March 5, 2007

Respectfully Submitted,

**PASKOWITZ & ASSOCIATES**

By: _____
Laurence D. Paskowitz, Esq. (LP-7324)
Roy L. Jacobs, Esq. (RLJ-0286)
60 East 42nd Street—46th Floor
New York, New York 10165
Telephone: (212) 685-0969
Facsimile: (212) 685-2306

Classattorney@aol.com

*Of Counsel*:

Ann D. White, Esq.
**ANN D. WHITE LAW OFFICES**
One Pitcairn Place, Suite 2400
165 Township Line Road
Jenkintown, PA 19046\
Telephone: (215) 481-0274
Facsimile: (215) 481-0271

Awhite@awhitelaw.com

# EXHIBIT A

# EXHIBIT A

## PLAINTIFF'S CERTIFICATE

The undersigned ("Plaintiff") declares, as to the claims asserted under the federal securities laws, that:

1.    Plaintiff has reviewed the complaint against Openwave Systems Inc. ("Openwave") and certain other defendants.

2.    Plaintiff did not acquire the security that is the subject of this action at the direction of plaintiff's counsel or in order to participate in this private action or any other litigation under the federal securities laws.

3.    Plaintiff is willing to serve as a representative party on behalf of a class, including providing testimony at deposition and trial, if necessary.

4.    Plaintiff will not accept any payment for serving as a representative party on behalf of the class beyond the Plaintiff's pro rata share of any recovery, except such reasonable costs and expenses (including lost wages) directly relating to the representation of the class as approved by the court.

5.    Plaintiff made the following transactions during the Class Period (September 30, 2002 to October 26, 2006) in the common shares of Openwave:

| Purchases | | |
|---|---|---|
| Date(s) | Number of Shares | Price |
| Please see attached | | |
| | | |
| | | |
| | | |
| | | |

| Sales | | |
|---|---|---|
| Date(s) | Number of Shares | Price |
| Please see attached | | |
| | | |
| | | |
| | | |
| | | |

6.    During the three years prior to the date of this Certification, Plaintiff has not moved to serve or served as a representative party for a class in an action filed under the federal securities laws.

7.    I declare under penalty of perjury, this 2nd day of March, 2007 that the information above is accurate.

Linda C. Wen

Plaintiff (Linda C. Wen) made the following transactions during the class period in the common shares of *opwv*.

| | Purchases | | | Sales | |
|---|---|---|---|---|---|
| Date | #of shs | price | Date | #of shs | price |
| 11/18/2002 | 5000 | 2.10 | 11/21/2002 | 5000 | 2.22 |
| 11/22/2002 | 10000 | 2.25 | 11/22/2002 | 5000 | 2.29 |
| 11/25/2002 | 2000 | 2.25 | 11/25/2002 | 5000 | 2.35 |
| 11/26/2002 | 5000 | 2.86 | 11/26/2002 | 5000 | 2.47 |
| 12/2/2002 | 5000 | 3.09 | 11/27/2002 | 4795 | 3.00 |
| 12/3/2002 | 5300 | 2.73 | 11/27/2002 | 205 | 3.01 |
| 12/3/2002 | 5300 | 2.67 | 12/3/2002 | 5300 | 2.73 |
| 1/19/2006 | 600 | 19.44 | 1/11/2006 | 6833 | 20.55 |
| 1/19/2006 | 2400 | 19.45 | 1/27/2006 | 7500 | 20.00 |
| 1/24/2006 | 4500 | 17.99 | 2/6/2006 | 3000 | 21.00 |
| 2/3/2006 | 3000 | 20.80 | | | |
| 2/14/2006 | 3000 | 22.02 | | | |
| 4/21/2006 | 990 | 21.20 | | | |

Linda C. Wen
3/2/07